Good morning, and welcome to the Eleventh Circuit. Judge Luck and I are again pleased to have sitting with us today Judge Schlesinger. He came up from the Middle District of Florida, and we always appreciate his willingness to serve with us. And one more housekeeping matter before we get started. Probably most of you are familiar that we operate on a traffic light system, but for those of you who are unfamiliar with the system, you will see the light is green for most of the time. When you have two minutes left, it will proceed to yellow, which means it's time to start wrapping up what you're talking about. When you get to red, you should certainly feel free to finish the sentence you're saying, but it's not an indication that you should start your final topic. Unless, of course, we still have questions for you, in which case we will let you go over that time. With that, I will call the first case. Devin Brosnan, Garrett Rolfe v. Keisha Lance Bottoms and Paul Howard, 24-11371. And I know we have given some extra time for this. I know we have a lot of attorneys who are going to appear, so we'll just start taking everybody in order. Mr. LaRusso? Good morning and may it please the Court. My name is Lance LaRusso, together with Ken Davis. I am honored to stand here today representing Devin Brosnan and Garrett Rolfe, two law enforcement officers whose lives changed forever on June 12, 2020, in the midst of a riot, in the midst of unrest in Georgia, when they were violently attacked by a convicted felon who committed multiple forcible felonies against them and used deadly force to protect themselves, only to find that the DA and their city attacked them as well. This Court reviews the motion to dismiss DeNovo, and that gives the Court great latitude to look at all of the decisions that were made. Now, I note ab initio, this Court must reverse and remand for one's particular reason, and I would like to get that out of the way. The District Court erroneously found that Garrett Rolfe did not file an antelitum notice, and because of that, the Court did not consider any of the state law claims. That clearly is an erroneous finding. But on DeNovo review, we could do that ourselves. In other words, that's the benefit of DeNovo review is, A, there aren't really findings, there are just legal conclusions that are made, and B, we can make those same legal conclusions ourselves because, you know, we're pretty good judges ourselves. I understand, Your Honor, and I know that sometimes the Court has feigned away from doing that just because it would require more of an analysis. I just wanted to bring those points to attention. I think there are times where it makes more sense for the District Court to do something on its own the first time, but there are some things like, something like that, where we could easily look at, especially where you have another plaintiff who's raised very similar claims that we're already analyzing, that it seems like we could just do that work ourselves. Does that make sense? Yes, Your Honor. Okay. And the first thing I'd like to get to, and we have several enumerations of error, but the first thing I'd like to get to is the qualified immunity issue. The District Court absolutely was correct in denying prosecutorial immunity for the defendants. I'll just call them the DA defendants for ease of discussion, and that would be Howard, Rucker, and Hanna. The Court made the proper determination under Buckley v. Fitzsimmons that they were engaged in an investigation, and far more than the prior case that you asked us to comment on, Gardner, Streeter, and Hood. We have several different investigative acts that were conducted, including interviewing witnesses, gathering witnesses, as we alleged. We alleged that they located witnesses and actually brought them to the press conference. They interviewed Devin Brosnan. They got a search warrant. So, the District Court got that right, that there absolutely was an investigation going on and they were not entitled to prosecutorial immunity. The qualified immunity is a little bit more problematic. The first thing that has to be discussed is whether or not their acts were within their discretionary authority. And if we look at the District Court's opinion with regard to the DA defendants and also with regard to Ms. Bottoms, the Court just summarily agreed that the acts that were committed, that qualified immunity was the analysis, was within their discretion without much circumstance. And I think it's important to recognize that because in the DA defendant's case, the acts of investigation are not included in the state statute that authorizes their actions, 15-18-6. Because their actions were investigative and not prosecutorial, they were not acting as advocates, that it is an erroneous finding to say that they were acting within their discretion. Further, and there's a misnomer in the opinion, and it's pretty interesting, as to Shields and Bottoms, the Court states that we admitted that they had the discretion to make the decision. We did not. We said that they would have the discretion to make the decision if they followed the ordinances that are in place. They do not have the discretion, as a policymaker, as a police chief, to disregard. Can we go back to the prosecutorial immunity? Yes, Your Honor. Okay. In Gardner, a key part of the decision in that case, as you're well aware, and as certainly at least two judges on this Court are well aware. We were both here. Yes, Your Honor. We all were here about almost a year ago, identically. Almost. Almost exactly. One of the key allegations was that Mr. Howard instructed his investigators, after solely watching the video, to go get an arrest warrant, and that resulted in the arrest warrant, correct? Yes. In Gardner, yes, sir. In Gardner. I've looked at the Gardner complaint again. I went back to my file and looked at it, and then I've analyzed the complaints that are in front of us here, and almost word for word, that exact allegation that triggered prosecutorial immunity is in the complaints here. I'll just do the, because it's, I don't want to duplicate the effort, Mr. Brosnan, or Officer Brosnan's complaint at paragraph 56, and I'll just read it because I think it's pretty relevant. In spite of the pending investigation, after only watching video recordings of the incident, which clearly demonstrate Plaintiff committed no crime, Defendant Howard instructed Defendant Hannah to obtain an arrest warrant for Plaintiff only five days after the incident had occurred on June 17, 2020. In other words, as I understand it, the allegations, exactly as before, are all Howard did is watch the video, and based on that video, he said, go arrest those folks, right? That is but one defendant and one allegation, but we went further in our claims. We also claimed, and we also asserted, that they took out a search warrant. They interviewed Devin Brosnan, and more importantly, and this is very, very important for- Yeah, but the search warrant was not related to the arrest warrant. You're right that they did those things, but if we're only talking about false arrest, which is how this is all related, the false arrest stems from that allegation. It's not just that allegation, Your Honor, and this is where it's important- But the search warrant has nothing to do with the false arrest. It does have something to do with the fact that it was evidence-gathering pre-probable cause, and if I can finish this important point, because you brought this out in Hernandez, and I think this is an important point to consider. In Hernandez, what had to do is the same as in Kirkland. When you're dealing with that case, it's very important to recognize the totality of the circumstances, so even if that is true, and I think we've asserted that, and I think we're entitled to discovery to find out exactly what occurred, you have two other actors here. You have Rucker and you have Hannah, and there is no dispute, we have alleged that the video showed acts that were felonious acts that would have justified the use of deadly force, but further, they interviewed Devin Brosnan very clearly when we talk about these cases, including in Hernandez, it is inappropriate in that pre-investigative, pre-probable cause context to ignore exculpatory evidence. They refused to take the medical records that would have showed that he was a victim- Mr. Counsel, you may be completely right about all of that, but if there is prosecutorial immunity, we don't get there, and so backing up to the question I had before, paragraph 56 seems to indicate that the causal connection between what happened and the arrest, because we're talking about a false arrest claim based on process, was simply the DA who watched the video after it had been collected, so the DA watched the video, whether correctly or not, whether it showed anything or nothing at all, said, arrest that man, and told his investigator to go do so, the investigator did so and got an arrest warrant. I just, I'm having trouble seeing, given the parallel between what we said in Gardner and that exact allegation in Gardner, how the conclusion on prosecutorial immunity would be any different. Because we went further. We went further in our allegations and the district court recognized that, that this was not just reviewing the videos. This court very clearly said that reviewing the videos essentially was not enough to say that an investigation was done, and I understand that. Whether I agree with it or not, in that context, that case is closed. This is a very different case. They went beyond that. They found witnesses. They interviewed witnesses. They interviewed Devin Brosnan. They had medical records that they should have reviewed, and they're required to— But even if those things were, quote-unquote, investigatory, at least as alleged in the complaints, that is not anything that led to the arrest in this case. The false arrest that led to process, according to the allegations, was simply the DA reviewing the video and, according to the allegations of the complaint, erroneously and falsely telling his investigators, go arrest those people. Your Honor, I cannot agree that that is the sole allegation as to the investigation. We pled the rest of the investigation. The district court picked up on that and said this was much more, and it was pre-probable cause beyond their state— Sounds a lot—  And maybe I wasn't clear in my question, and I apologize for that. There may be allegations of investigatory acts, and those may have been ones that are not covered by what would be prosecutorial immunity. But the question before us is, what acts led to the arrest warrant? And the acts that led to the arrest warrant are only alleged to be one. Despite whatever else was going on, arrest warrants and interviews, the only thing that led to the arrest warrant was the DA watched a video, from whatever reason concluded that an arrest warrant was appropriate, and directed his investigator to go get an arrest warrant. If that is the chain that led to the arrest warrant, how is that not exactly what we had in Garner, which we have said, and I know you don't agree with it, but which we have said is covered by prosecutorial immunity? Because we alleged it was far more than just watching the video. And I believe that's in the complaint, Your Honor. I can't cite the exact paragraph, but I believe it's in the complaint. I just read to you—I mean, I'll look at it again. That's one paragraph. I know, but that is the key paragraph. It says, after only watching—only, again, not my word—after only watching video recordings of the incident, which clearly demonstrated that there was no crime, Defendant Howard instructed Hannah to obtain an arrest warrant for the plaintiff only five days after it occurred. That's it. It's the only act that we have. And so I'm having trouble—and I'm telling you this because I'm having trouble getting past where we already decided in Garner, at least as to this issue. I understand, Your Honor. I don't know what else I can say to try to satisfy you. Is there something else that we can talk about other than the false arrest claim? Oh, there's plenty of other things. And with regard to the qualified immunity, and I think it's important to recognize, as I stated, they did not—the district court failed to actually look at the discretion and just summarily assume that that was within their discretion to do what they did. But I want to move on to the equal protection because I think it's a very important issue. Equal protection, we did not allege a class of one. The appellees came back and said, well, they're alleging a class of one, and we're sitting here screaming. We didn't say that. Well, we said there was a non-suspect class. If I had to clarify that's non-suspect class, it's officers who were accused of excessive force. That normal class gets due process in this—talking about the city defendants—they get due process. They get a time frame. They get a timeout. They get access to information. And they get to have a pre-due process hearing. In the Gardner opinion, I think there was also that mistake, as I recall, or at least that confusion. And I think there we said, even if it's not a class of one, even if it was a class—I think we defined it a little differently in Gardner. It was those who had been accused of excessive force against a certain group, as I recall. But let's just take the group out of it and just excessive force. There we said, even without that, there was still a rational reason for treating these folks differently than other folks. Why would that result not be the same result here? Because we have something missing, and I think you'll recall our discussion about malice. I remember it. In that case— As I recall, we clarified that in Gardner. We did. And I appreciated that colloquy. But what's interesting, Your Honor, when we talk about the rational basis—first of all, the appellees never raised the issue. But with regard to a rational basis, number one, it is never a rational basis to accuse men falsely of committing murder. That is never a rational basis. It's never a rational basis for a policymaker to disregard clear ordinances that give due process rights. And the appellees talk about how much unfettered authority that Keisha Lance Bottoms had. Well, if she had that much unfettered authority, then there is no doubt that she's a decision maker, and her decision to bypass all of the ordinances that we set out for the court clearly exposes the city to Monell liability. They can't get around that. And there is no rational basis, and it is almost incredible to think about this. The rational basis the city wants you to believe is that mob rule was so bad, the safety of the public was at risk, therefore, we were able to disregard the rights of individual police officers, the non-suspect class. That cannot be the law. Didn't we say, and we cited the cases that went to this rationale, what the police department or police officer said, I'm sorry, what the mayor said, was that the perception out there is that there is a problem, and I need to act in order to clean up the police department and to assure the community that we are on top of what we perceive to be a problem. Whether that's true or not, that is a rational act, is it not, to address public perception? No, because what we actually specifically have in this case we didn't have in Gardner is expressed malice through their words. We quoted, and I'm running out of time, but I just want to go through this, Paul Howard But the expressed malice only gets to the Georgia official immunity. We're talking about rational basis for the decision under the equal protection analysis. How can there be a rational basis when your answer is, I watched the video and it pissed me off and then I took action against them? That is her quote. Paul Howard saying that a falsehood of Devin Brosnan standing on Brooks made him so mad. There is no doubt they perpetrated these acts without a rational basis to punish these officers. There was other statements that were quoted in the complaint though, were there not? There were a lot of other statements. And some of those statements went to what they perceived to be the public's concern about police conduct during this fraught time, isn't that correct? Using a mob is never a rational basis to disregard the rights of officers. Well, that certainly may be true in terms of due process, but in terms of equal protection, is it not rational for a mayor to respond to the community in making a decision? We quoted, for example, in the Gardner opinion, the First Circuit's decision in that case where the contention was that the defendant made the decision to terminate him. In order to protect the public perception of, in that case it was the lottery, there is simply nothing irrational about acting on that basis. How is that not exactly what we have here? Because this is not a situation where there's a public perception that there's some wrongdoing. This is a public perception that the city is in danger. If that is the case, then due process is merely a set of words on a piece of paper. And I do have some time for rebuttal. Thank you. You have five minutes and one moment. All right, Jim, we'll let you come out now. Sorry. All right, Ms. McGovern, and I know y'all are going to be proceeding quickly. There are a lot of you. It looks like you all have four minutes, and that's going to proceed far more quickly than you think. So let's go ahead and get started. Good morning. May it please the Court. I'm Anna Rita McGovern. I'm on behalf of Investigator Hanna, and the first point, Judge Luckey, you're absolutely correct, is that absolute immunity should have been granted to Hanna by the trial court first and foremost based on this Court's recent ruling in the Gardner case. Why is your opposing counsel not right that there are other allegations in this complaint that are separate and apart from what was alleged in Gardner? Well, specifically as to Hanna, Hanna is here only for procuring the arrest warrants. She's not involved in all of that. Some of that will be addressed more with D.A. Howard. However, a prefatory investigative act still would not terminate the right to absolute immunity for the actions that were taken in conjunction with the initiation of the prosecution. Here we have within literal moments the arrest warrants being obtained by my client and D.A. Howard during a press conference announcing that he was proceeding with the prosecution. That is why the trial court erred in their interpretation of Buckley and indicating that in fact they thought there was more evidence being gathered, but instead this was part of the initiation of the prosecution. There were no specific pleadings in specific allegations in the complaint regarding investigation and details that would take it outside of that. And in Buckley, we had a different situation in that it was very far removed and we had 10 months and a panel that was, let me back up. The trial court erred in saying indictment was a relevant issue because it's not. Buckley said that indictment is not an issue because in that case there was a special grand jury convened for investigatory purposes and then within 10 months the prosecution was initiated and in this case it is almost simultaneous. In the present case also, we have under the functional analysis of Buckley, an individual who went to get the warrants of the behest of the D.A. and it doesn't matter that he was acting as an investigator as opposed to the D.A. himself and what he did was well within the scope of his duties. In addition, the preparation and presentation of an arrest warrant is an appropriate action that's entitled to absolute immunity. In Colina, the court found that all aspects of preparing and presenting an arrest warrant to a court is entitled to absolute immunity with the sole exception of in that case the D.A. presented the evidence. But interviewing a witness and getting a search warrant and those sorts of things are not what you just talked about, right? Well, and I was going and expanding, but those things, the only thing that's at issue with Hanna is going to get an arrest warrant. That specific act was done in conjunction, there was one allegation in the complaint as you noted that was the review of the video cam footage and that was part of reviewing the evidence. It is appropriate for a D.A. to review the evidence as part of the initiation of the prosecution and that's entitled to absolute immunity. If other acts happened before, that does not sever the fact that the acts done at the time of the initiation of the prosecution were appropriate and entitled to immunity. Hard to do that, though, if it's alleged that those were investigatory acts and those acts preceded what happened here, why are those not investigatory acts that led to the ultimate result? My client was not involved in those investigatory acts. The only allegation on him is getting the arrest warrant. That was in the— I know, but he's in on the conspiracy, so he's in it one way or the other. Okay. It still doesn't sever—the law is clear that it doesn't sever the right to absolute immunity for the acts that are in conjunction with things that were done long before don't sever the right to absolute immunity at the time of the initiation of the prosecution. At that time, the D.A. made a decision. He was proceeding to prosecute. He was announcing it. At that exact same time, the arrest warrants were obtained. That's the issue that we're here on and that is the issue we're entitled to immunity for. Absolute immunity and not just qualified. I thank you. I see I'm out of time. Thank you. Mr. Green? Good morning. You may please the court. I'm Noah Green on behalf of Paul Howard. So a lot of my questions to your co-counsel here are really directed at you since your client is the sort of the top of the pyramid, at least in this part of the allegations. It does seem to be that there is some different stuff here than there was alleged in the Garner complaint. Why does that not make this different for purposes of prosecutorial immunity? The district court certainly treated it that way. So two things. As you mentioned earlier in Rolfe's complaint and Brosnan's complaint, I believe it was paragraph 57 of Rolfe's complaint, paragraph 56 of Brosnan's complaint, the allegation was that Howard only reviewed the video before making a decision to get an arrest warrant. You agree though that employees under his direction and authority conducted investigatory acts that were different than just watching the video. Your opposing counsel mentioned what some of those are. There was the search warrant that was done for the cell phone. There was the interview of I think it's Officer Brosnan that happened and maybe one or two other acts. There is alleged that there was sort of an investigatory unit that was created as a result of this, sort of a second police department, the way that he argues it. Why is that? Why are those not investigatory acts outside of the immunity as discussed by the Supreme Court? Well, one, I don't think any of those acts were responsible for the arrest, which is what the complaint we're here about today. But two... Well, actually, we're here about some other stuff. Your client is actually alleged to have, through his actions, deprived the plaintiffs of their homes. That's also different than in the Gardner case, correct? That's correct. And if you want to talk about that, we can. I think the causal connection there is so attenuated, it's hard to even... Tell me why it's attenuated. The allegations are that your client, with another defendant, incited and encouraged a mob, who then created an autonomous zone near where the officers lived, such that they were no longer able to live in their homes. Is that a fair assessment of the allegations? That there was... I mean, there was already unrest in the city. I think it was seven miles from one of their homes, and they alleged a short drive from another home. I mean, the video was available. I think the district court got it right when they said the video was widely available, people were watching it. If anything was responsible, it was the video rather than Howard's words. And if I could just go back quickly, I think the Mullinex decision that this court made covered interviewing witnesses as part of the preparation that a district attorney or a prosecutor goes through before presenting a case. So I think the allegations that... Really I don't think are apropos to the false arrest claim. But even so, I think those acts under Mullinex would still entitle Howard to immunity. Are there any additional questions? Thank you, counsel. Okay. Thank you. Mr. Buckley.  May it please the court. My name is Tim Buckley, and I represent Assistant District Attorney Rucker. We're in agreement that the prosecutorial immunity that is absolute should have been applied by the district court, but what I intended to do was address that if we do go to the qualified immunity analysis, that the plaintiff, as the district court found, conflates the analysis of prosecutorial immunity indicators from the indication of the normal processes that are followed by assistant district attorneys and investigators in a DA's office. Let's assume that's right. Why still do you win on qualified immunity? So let's say I agree with you that the acts are at least discretionary even if they're not entitled to prosecutorial immunity. Why is the plaintiff not met their burden with regard to the two elements for qualified immunity? Well, in that respect, the reason they haven't met them is what the district court found, which is that there aren't specific allegations to support a notion that Rucker violated the plaintiff's actual rights and that the search and seizure of a phone and the records pursuant to a signed warrant is within the discretion of a district attorney. So there's nothing... Not that there's false evidence, though. I mean, if the allegations are that the affidavits were procured based on false statements, both the search warrant and the arrest warrant, and that your client was involved in the creation of those, the law is pretty clear under what we'll call the broad principle that you can't obtain a warrant based on false statements, right? That's true, Your Honor, but what the district court also found was that even if curative was applied to those aspects of what was procuring the search warrant were rectified or eliminated, there was still probable cause under the search warrant on other grounds. And what about the arrest warrant? I mean, the arrest warrant was pretty thin. Well, the arrest warrant here by the plaintiff's own allegation was solely because Paul Howard watched the video and made that decision. They have to be saddled with their allegations. Right, but the allegations are also that the video showed nothing. It's in that same paragraph. Okay. So if they falsely said what was in the video, in other words, if they said there was excessive force that caused a crime, in other words, assault, battery, without justification, and the video showed the exact opposite of that, that would be a false statement, would it not? It, as stated, that might be, but we then go back to... I didn't just state it. That's what the allegations are. Well, as alleged, I'm agreeing that that would appear that way, but then they can't have it both ways. If the allegation is that the warrant was procured solely based on the video, then prosecutorial immunity applies. All these other things, as the court has noted... Well, that's not necessarily true. In other words, one can investigate and seek a warrant only on the video. Those are two different things. In other words, the PDA's office could have taken over the investigation on its own and arrested on its own, but the warrant that was presented to the signing magistrate only included facts related to the video. Those are not inconsistent. Well, they're inconsistent in terms of what the legal analysis is that's applied to the two things. The prosecutorial immunity would apply to the procuring of the restaurant, and if it's only based on that, qualified immunity would be if you tried to edify their claims by bringing in the phone warrant and the investigation and the interviews. Regardless of that, I will point out and reiterate that several of the counts don't name my client, and so there's aspects of this case that procedurally he shouldn't be a defendant, and those rulings were appropriate. Thank you. Thank you. Mr. Hoffer? Thank you, Your Honor. Please, the court. I'm Michael Hoffer. I'm representing Fulton County on this appeal, and really, for the county's purposes, Appellant's claims against Fulton County are Monell-based, and for a Monell claim, we need to have a county and not a state final policymaker to have a potential Monell liability, and in this case, really, I think the Gardner decision is on point, but really, even more on point is what Gardner cites to, and that's the Owens versus Fulton County decision, which squarely holds ... I mean, it's even about the Fulton County DA and whether the Fulton County DA is acting as a state actor or a county actor for final policymaking authority for a Monell claim, and the holding in Owens is, except under very, very limited circumstances, which are administrative or budgeting, which is hiring, firing, and budgeting matters, that the district attorney is a state actor, and so we're not getting into, for county liability, the prosecutorial versus investigative duties is a separate analysis, and my co-counselor addressing that, but for the county, what we're dealing with is whether former DA Howard was a state actor, and under the holding in Gardner, and by extension, the holding ... Well, actually, I should say the reverse. Under the holding in Owens, and by extension, the holding in Gardner, former DA Howard would be a state actor and not a county actor, and therefore, that forecloses Monell liability against Fulton County, and if there are any questions, I'm happy to answer them, or I'll go ahead and ... And would take care of immunity under the state constitution as well, correct? Correct. For the state law claims? Yes, correct. Any other questions, your honors? Thank you. Thank you. Ms. Lewis. Good morning, your honor. Your honors. Joyce Lewis here on behalf of the City of Atlanta, Keisha Lance Bottoms, and former Chief Erica Shields. May it please the court ... Why don't you address the equal protection claim? That seemed to be the one that implicated your client more than any of the others. Yeah. Thank you, your honor, for asking about that. I noticed that your honor asked the correct question of my friend here, which was what difference does it make whether we are talking about class of one versus the suspect class of rational basis? It's going to be ... Is rational basis an objective analysis or subjective? In other words, do we look at what the actual motives of the official or the decider of the city are in a given case, or do we look at what is a reasonable conceivable basis for the decision? Your honor, we look at whether there is any conceivable rational basis, not whether there is any improper motive. And I would point the court to the decision in Havis versus Miami, 52 F. 3rd, 918, which is a 1995 case out of this circuit, obviously. This is well established what the standard is. If there's a conceivable basis, the rational basis standard is going to ... So what is the conceivable basis here for doing what is alleged to have been done in this case, which is significant and severe? The conceivable basis is the same conceivable basis that was discussed by this court in Gardner and was alleged specifically by the plaintiff in this case. They alleged that Atlanta was literally burning. They alleged that there was widespread unrest in the city. As this court found in Gardner, it was completely rational. Whether they agree with what the mayor said or her conclusion or not, it was rational for her and her position as mayor to address ... Let me just play devil's advocate on that a little bit.  It seems really ... I am concerned as a legal and policy matter for us to say what you've just said. In other words, that a mayor, in order to mollify a mob in a city, could falsely accuse two people of doing a heinous crime. Because that's what your opposing counsel said when he was up here, and that has some appeal to me that yes, that may have been a conceivable basis, and that may even be a reasonable one under these circumstances. But do we want to hold as a matter of law that it's okay to do that? Because I can see a circumstance where you'd be up here and be outraged if that were done, if things were flipped or circumstances were different. And I think that's a fair observation, Your Honor. But the law that existed at the time that Mayor Bottoms made this statement is the law that I just quoted to you. And from a qualified immunity standpoint, we have to look at whether it was well-established law that would have put the speaker on notice that what they were doing was wrong. That is completely absent here. And from an equal protection basis, again, the law was a rational basis. We have articulated, this court and Gardner articulated the same rational basis that I just articulated to you. We look to the outer perimeter of the official's duties. And this court found that in the Harvard International v. James case. So I understand that they do not like what she said. I understand that they disagree. I understand that the court may disagree, and I may disagree. But our subjective disagreement is not the basis for determining whether or not a rational basis exists. Let me be clear. We only take the allegations as they are. I don't know what's true or not. Correct. And I don't know what was in anyone's heart at any time or not. My only question to you is, we have to establish a principle of law. And do we want to establish the principle of law that it is reasonable for a government official, because of mob violence, to falsely accuse someone to mollify that mob violence? That's the question that your opposing counsel asks and that I'm asking you. I see my time is up. You may answer. Your Honor, I think, and I think the district court properly found that what you just said is actually a legal conclusion that was being asserted. And on a motion to dismiss, the court was not required to take the legal conclusion that was being asserted as to what was intended. Not required to take that as a fact. Or accept it as true. Let me ask you one question about the issue of the seizure of the homes. And your co-counsel has pointed out the video was already out there. So the statements made by your client are commenting on the video. And so any problem sort of is caused by the video, not by your client. But as has come out in the, or is alleged in the complaint, what your client added to the picture, certainly the video was on television a lot, but your client identified the plaintiff's by name. Your client referred to what happened on the video as murder. So how does, how do those additional pieces of information that are being transmitted to the public in these press conferences, how does that not strengthen the causal link here? Well, in terms of the causal link, let's talk a little bit about what was not alleged, Your Honor. It has not been alleged that Mayor Bottoms publicized these people's addresses. It has not been alleged that Mayor Bottoms directed anyone to harm them or to interfere with their property. It has not been alleged that this mob knew where they lived. It has not been alleged that anyone came to their homes or approached them. What has been alleged is that they had fear. And that is not actionable for purposes of a constitutional violation claim. Thank you, Your Honors. Thank you. Mr. LaRusso? Yes, very quickly with regard to the causation. Owen versus City of Independence and Marrero require a very, very lower burden on causation. All it requires is the public, in the public's eye, that there would be a causation between the defamatory statements and the injury. It seems to be less a causation issue for me than it is a state action issue. I mean, it's clear that it's the mob that caused the folks to be there. And the only state action would be the allegations of incitement. I think there might be a conclusory problem. I mean, just saying the word incitement might not be enough. But even if it is, the sort of what we call the coercion part of the private state action test is a really, really high standard that requires essentially coercive actions by the state agent to cause or to forward move the action that the private entity does. And where in the allegations, what's your best allegation for how that happened here? Well, first of all, Your Honor, I would, and next in my notes, this is not state action. If we go to Manders versus Lee, we look at the four factors, the four factors weigh heavily against Paul Howard being any type of a state actor. Let me be, I'm talking about state action for 1983 purposes. I'm even assuming that he is a state actor. Oh, you're saying he's not even a state actor? He's not a state actor. I'm sorry. I'm assuming 1983 applies to him under my question. But you still have to show state action. In other words, if Private Citizen X assaults Private Citizen Y on the street and takes him out of his home, that is not subject to a 1983 suit. But if state actor put a gun to Private Citizen A's head and said, you have to get to kick that guy out of his house, then that would be state action. This gets back, and I misunderstood your question. This gets back to the issue of the circumstances at the time and the extrajudicial statements and the statements that were made by Keisha Lance Bottoms. There was no legitimate purpose. We talk about a rational base. There was no legitimate purpose for Paul Howard to not only defame them and state false statements and for Keisha Lance Bottoms to say things like, we were rooting for him when the video shows he was violently assaulting two uniformed officers. When you make statements like that, you should know, as a member of the bar for 25 years, you are going to inflame the public. And this is not inflaming the public who happen to be watching something on court TV. The problem, though, is, and I, let's assume for the moment that I agree with everything you just said and that your complaint established that sufficiently and plausibly, that still doesn't get you to inflame them to the point to kick them out of their homes, which would be required for seizure of a house. So, in other words, just inflaming a mob and making someone angry at someone is not specific to, and I want you to go to their homes and make it so they can't live there. There seems to still be a disconnect in the coercion for the constitutional violation. Not exactly, Your Honor, if we look at the act as not specifically a seizure, like the government standing there and saying you can't go into your house. It is basically interference with the right to enjoyment. And, you know, the causation that was alleged by the appellees is nobody kicked them out of their house. Well, only an idiot would stand there and wait for the pitchforks. It was reasonably foreseeable that when you make these statements as the elected D.A. and the mayor, under these circumstances, under this hotbed and throw gasoline on a fire, that they would be into their right to return to their homes would be interfered with. These are Atlanta officers. These are not state patrol officers who could live anywhere in the state. They were confined to this geographical area, and it was reasonably foreseeable that their actions would, their actions as state actors, their actions as government officials, would have that effect. And it, in fact, did have that effect. I just, I don't know any principle of law, and this gets to the qualified immunity issue, that says that a deprivation of a property right is one's fear of returning to one's home as opposed to an actual interference. Like, you can't go in, it's surrounded, we're blasting noise in front of it. Like, those are things that law recognizes as interference. I just, I don't know that there's any principle of law that recognizes a mob seven miles away or with, or driving distance away as being an interference that the law recognizes as interference of property interests. I think these are some interesting times, Your Honor, and the reasonably foreseeability that would have been a problem. And let me get to this Manders versus Lee thing, because it's very important with regard to Owens. If you look at the four Manders factors, and even in the unbanked decision, the Manders factors, the four factors, did not all weigh in favor of the sheriff having, being a state actor. Here, when we look at the first one that I'm going to look at, is the state act. And the court brought up 1518-6. May I complete my answer? I'm out of time, but... You're just starting a factor. You can finish your sentence, but... In and of itself, the court is going to look as the first factor to what state law says. State law specifically says Paul Howard and the defendants, and the DA defendants, cannot investigate. That is not in the statute that empowers them, and therefore, this is not state action. And Owens is a functional analysis that should allow this court to carve out an exception for running a second police department and doing your own investigations. Thank you. Thank you. Thank you all. We have your case under advisement. I would be excused, Your Honor. Be excused. Oh, yes. Governor, may I approach your clerk for a moment? Yes.